# UNITED STATES TRUST CO. *v.* DAVID.*

---

EVIDENCE; NOTICE; NEGLIGENCE; EQUITY; MISTAKE; APPEAL AND ERROR.

1. A paper which expressly refers to another paper within the power of the party gives notice of the contents of such other paper.

2. Whatever is notice enough to excite attention and put a party on his guard and call for inquiry is notice of everything to which such inquiry might have led. When a person has sufficient information to lead him to a fact, he is to be deemed conversant of it.

---

*Equity—Mistake.*—For an extensive note on the subject of relief from mistake of law as to effect of instrument, see *Dolvin* v. *American Harrow Company,* 28 L.R.A. (N.S.) 785.

3. Where a mistake is the result of a party's carelessness and inattention, a court of equity will not grant him relief against its effect.

4. A bank to which the receiver of an insolvent corporation presents his order of appointment containing the title and number of the cause in which he was appointed receiver, with a demand for the transfer to himself of the deposit of the corporation, has constructive notice of the contents of the bill of complaint in such cause; and if the bank, after two days' delay for purposes of investigation, makes the transfer, it cannot thereafter recover from the receiver the money so transferred to him, on the ground that it was paid under mistake of fact; especially where the facts upon which it relies are set forth in the bill in equity.

5. An assignment of error presenting a moot question only will not be passed upon.

No. 2111.   Submitted February 6, 1911.   Decided March 6, 1911.

HEARING on an appeal by the petitioner from a decree of the Supreme Court of the District of Columbia, sitting as a court of equity, dismissing a petition for the recovery of a sum of money alleged to have been paid under a mistake of fact.
                                                   *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a decree of the supreme court of the District dismissing the petition of the appellant, the United States Trust Company, a corporation, in which it seeks to recover from the appellee, Levi H. David, receiver of the Sanitary Grocery Company, a corporation, $3,485.36, which appellant avers it transferred on its books to the credit of appellee under a mistake of fact, and subsequently paid to appellee under order of court.

On June 2d, 1909, the Semmes-Kelly Company, a corporation, filed its bill in equity as stockholder and creditor against the Sanitary Grocery Company, a corporation, and Charles W. Semmes, in the supreme court of the District of Columbia. This bill averred that the complainant was incorporated and organized under the laws of the State of Virginia, on May 3d, 1902, and that its existence had been continuous since that

time; that its main business had been and was then being conducted in the city of Washington; that the Sanitary Grocery Company was an existing business corporation organized under the laws of the District of Columbia, on the 15th of April, 1907; that its principal office and business had been and was located in the city of Washington; that it also conducted business in Hyattsville, Maryland; that the Semmes-Kelly Company was a wholesale dealer in fancy groceries; that the Sanitary Grocery Company was a retail dealer in fancy groceries and provisions; that it had twenty-four different retail grocery stores in various parts of the city of Washington, and one in Hyattsville, Maryland, and that, while each of said stores was apparently conducted as a separate store, they were all operated by said Sanitary Grocery Company as "a chain of retail grocery stores;" that the capital stock of said Sanitary Company was $5,000, divided into fifty shares of the par value of $100 each. The original subscribers to the capital stock were then given, and the manner by which said Charles W. Semmes acquired forty-seven of the fifty shares of stock was set forth. It was also averred that no stock book was ever obtained by said company, and that no certificates of stock were ever issued to any of its stockholders; that ever since the incorporation of the Semmes-Kelly Company said Semmes had been its president; that said forty-seven shares of stock ostensibly acquired by said Semmes were in fact acquired for said Semmes-Kelly Company, which had supplied said grocery company all the merchandise used and sold by it at its various stores at the retail or selling price; that said grocery company then had on hand goods and fixtures of stated values, and that it was indebted to said Semmes-Kelly Company for merchandise and personal property furnished it by said company; and that said grocery company was insolvent.

The petition then set forth that said Semmes-Kelly Company was itself insolvent, and that it had been obliged to liquidate its affairs. The petition then continues: "That in justice to the creditors of your complainant, the relations existing between it and the defendant company should be judicially de-

termined, and a proper accounting between them under the direction of this honorable court." It was further set forth "that, in view of the fact that of the total fifty shares of capital stock of said defendant company, forty-seven of said shares, standing in the name of said defendant, Charles W. Semmes, who is the president of the complainant, are really owned and possessed by your complainant, and the insolvency of the complainant, and that complainant is unable to meet its obligations and continue its business, the insolvency of the defendant, it is highly important in the interests of your complainant and all of its creditors, that receiver or receivers should be appointed to take into his or their immediate possession all of the goods, wares, and merchandise, the various stocks of goods, fixtures, etc."

The petition closed with prayers asking for a receiver; that the assets of the grocery company be sold, that said forty-seven shares of stock standing in the name of Semmes be decreed to the Semmes-Kelly Company, and that the cause be referred to an auditor for an accounting between the parties, and for general relief. The grocery company on the same day filed an answer admitting all the averments of the bill, and on the same day an order was passed appointing the appellee herein receiver of said grocery company. The appellee immediately qualified as receiver, obtained a duly certified copy of his order of appointment, and repaired to the banking house of the appellant, accompanied by the receivers in bankruptcy of said Semmes-Kelly Company. Upon arriving at said banking house appellee informed its treasurer and first vice president, its representatives, of the institution of the suit resulting in his appointment as receiver, and also served upon said representatives the copy of the order of his appointment. The receivers of the Semmes-Kelly Company also served a copy of the order of their appointment. Thereupon, appellee made demand for the money on deposit with the appellant to the credit of said grocery company. The receivers in bankruptcy made a like demand on behalf of the Semmes-Kelly Company. Said representatives of the appellant informed appellee that it would

be necessary for them to confer with counsel of said appellee and obtain his advice. Thereupon, the presence of said counsel was obtained, who, after a conference with said bank officials, informed appellee that he wanted "to go over all of the facts" before deciding the matter. On the afternoon of the next day, June 3d, 1909, appellee had a conversation with appellant's counsel, who informed appellee that, after considering the entire matter, he had advised appellant to deliver to appellee the money standing on deposit in said bank in the name of said Sanitary Grocery Company. That, owing to the indebtedness of the Semmes-Kelly Company to the bank, he had advised the withholding of the deposit standing in the name of that company. On the next morning, June 4th, 1909, appellee again went to the bank and learned that there was a balance of $3,485.36 to the credit of said grocery company. Thereupon, the officials of said bank requested the receiver to open an account as receiver with that bank, whereupon said receiver informed them that he did not wish to become involved with the bank in the controversy with the Semmes-Kelly Company. He was assured that under no circumstances would the bank involve him in any controversy with reference to said fund; that said bank would at no time assert any claim to said fund or any part thereof. On the strength of this representation said receiver opened an account with the bank, and said amount standing to the credit of the grocery company was transferred to his credit as receiver and a pass book issued to him. On the 14th of June, 1909, said receiver filed his first report, in which he stated that he had on deposit with the appellant the sum of $3,485.36. On June 16th, 1909, he received through the mail a letter from the bank dated the 15th of June, in which it is stated:

We are just now informed that the Sanitary Grocery Company, of which you are receiver, is a corporation, the stock of which is owned and controlled by the Semmes-Kelly Company, another corporation, against which an involuntary petition in bankruptcy was filed on the 2d day of June, 1909,

and receiver appointed thereunder with the consent of the Semmes-Kelly Company.

In view of this information, we desire to state that, on advice of counsel, we will refuse to recognize you as such receiver of the Sanitary Grocery Company, and will apply the moneys on deposit to the credit of the Sanitary Grocery Company to the indebtedness due and coming due to the trust company by the Semmes-Kelly Company, unless otherwise ordered by the court.

The pass book with the credit entered given you as receiver was done so by mistake of fact, is null and void.

.Very respectfully yours,

G. W. Warden,

Vice President.

Thereupon, appellee made formal demand for said deposit, which was refused. Subsequently, a rule was issued against the bank and its officers to show cause why they should not forthwith deliver to the receiver of said Sanitary Grocery Company the withheld amount, and why they should not be adjudged in contempt of court for their acts in the premises. A hearing was had, and all the respondents were adjudged in contempt and required forthwith to pay said $3,485.36 to the receiver. The order provided, however, that, upon compliance with its requirements, the bank should have leave, if it so desired, to institute such proceedings against the receiver as it might be advised. Thereupon, said deposit was paid over to the receiver and the petition herein was filed. We do not deem it necessary to repeat the averments of that petition, since the *prayer for relief was based upon substantially the same facts as were set forth in the original petition of the Semmes-Kelly Company against the Sanitary Grocery Company.* The petition asked for the return of said deposit, for a decree that the Sanitary Grocery Company is not a separate and individual corporation, and that the receiver of said grocery company be directed to turn over all assets to the receivers of the Semmes-Kelly Company and be discharged.

Subsequently, leave was obtained to file as a part of said petition the affidavit of said counsel for the trust company, in which it was stated that the advice upon which said trust company acted when it transferred said sum to appellee "was based upon a misapprehension of the facts; that affiant is well acquainted with Charles W. Semmes, of the Semmes-Kelly Company; that said Semmes on a number of occasions told affiant that he individually owned and controlled a majority of the stock of the Sanitary Grocery Company, and that on at least one occasion Semmes told him that he, Semmes, was contemplating withdrawing from the Semmes-Kelly Company, and confining his active work to the development of said grocery company; that affiant had no idea that when he gave his advice to the trust company, as stated above, the Semmes-Kelly Company owned a majority of the stock of the Sanitary Grocery Company, or any substantial part thereof."

A hearing was finally had upon the petition, the rule to show cause, the answer and return thereto, and the pleadings and proceedings in the cause. That hearing resulted in the dismissal of the petition and this appeal was taken.

*Mr. Benjamin S. Minor, Mr. Gibbs L. Baker,* and *Mr. Hugh H. O'Bear* for the appellant.

*Mr. Alexander Wolf, Mr. Levi H. David,* and *Mr. W. G. Johnson* for the appellee.

Mr. Justice Robb delivered the opinion of the Court:

Among the other questions involved in this appeal is the fundamental one whether the appellant was, under the circumstances of this case, chargeable with knowledge of the relations existing between the Semmes-Kelly Company and the Sanitary Grocery Company when it acquiesced in the demand of the receiver and transferred to his credit the balance of $3,485.36 standing to the credit of the Sanitary Grocery Company. We will first consider this question.

It being conceded that the petition of the Semmes-Kelly Company, filed June 2d, 1909, and praying the appointment of a receiver for the Sanitary Grocery Company, contained a statement of substantially all the facts which subsequently led the trust company to repudiate its act in recognizing the right of the receiver of the grocery company to the deposit standing in the name of that company, the real question is whether the trust company was chargeable with notice of the contents of that petition. "It is a general rule that a paper which expressly refers to another paper within the power of the party gives notice of the contents of that other paper." *Livingston* v. *Maryland Ins. Co.* 7 Cranch, 506–537, 3 L. ed. 421–431. Is there any reason why this case should be excepted from the rule? We perceive none. When the receiver of the grocery company appeared at the bank on the 2d of June, 1909, he served upon the officials of the bank a certified copy of his appointment as such receiver. The caption of this copy contained the number of the equity cause and the names of the parties. The order of appointment purported to have been made "on consideration of the herein bill of complaint and of the answer of the defendants filed herein." As previously noted, said receiver was accompanied by the receivers in bankruptcy of the Semmes-Kelly Company, who also served a copy of the order of their appointment upon the bank officials. The receivers of each company made demand for the deposit standing to the credit of that company. Thereupon, the presence of counsel for the bank was procured, and after conference with the bank officials he stated: "That he could not at that moment decide the question for the reason that he wanted to go over all of the facts; that as soon as he could do that he would decide the matter." Upon the next day, June 3d, 1909, the receiver for the grocery company was informed by the bank officials that the question whether the bank would deliver the money standing in the name of said company to such receiver was in the hands of counsel "for investigation and advice." Thereupon, the receiver communicated with counsel for the bank, who said that "after considering the entire matter" he

had advised the bank to recognize the claim of the receiver. Counsel at the same time stated that the claim of the receivers in bankruptcy would not be recognized as the Semmes-Kelly Company was indebted to the bank. On the next day, June 4th, 1909, two days after the service upon the bank of the order appointing the receiver herein, that receiver went to the bank, and his claim to the fund in controversy was recognized and a transfer of that fund effected.

The Sanitary Grocery Company, in form at least, was a separate corporation, and not indebted to the trust company, and yet counsel for the trust company, after a conference with the bank officials, was unwilling, notwithstanding the apparent conditions existing, to pass upon the question submitted to him, that is to say, the question whether the demand of the receiver herein should be recognized, until he (counsel) could "go over all of the facts." Evidently something had aroused the suspicions of the bank and prompted its counsel to make a further investigation. The Semmes-Kelly Company was indebted to the bank, and the bank had actual knowledge that the appointment of the receiver for the grocery company was upon the petition of the Semmes-Kelly Company, its debtor. It had actual notice that both companies were insolvent, and that their relations would necessarily be involved, to some extent at least, in the equity cause. We think these facts clearly bring the case within the rule that "whatever is notice enough to excite attention and put the party on his guard and call for inquiry in notice of everything to which such inquiry might have led. When a person has sufficient information to lead him to a fact, he shall be deemed conversant of it." *Wood* v. *Carpenter,* 101 U. S. 135, 25 L. ed. 807. The bill in the equity cause was subject to public inspection, and in the circumstances of this case we think the bank was chargeable with constructive notice of its contents when it transferred the amount in controversy to the credit of the receiver of the grocery company. Constructive notice being as effectual as actual notice (*Domer* v. *District of Columbia,* 21 App. D. C. 284), the trust company is not entitled to the aid of equity to

relieve it from the result of its own negligence. *Roberts* v. *Hughes,* 81 Ill. 131, 25 Am. Rep. 270; *Sheldon* v. *South School Dist.* 24 Conn. 88. "If the mistake is the result of the party's carelessness or inattention, the court will not interfere in his behalf, its policy being to administer relief to the vigilant." *Wood* v. *Patterson,* 4 Md. Ch. 339.

The affidavit of counsel for the trust company, to which reference has been made, does not constitute a justification for the failure of the bank or of its counsel to examine the pleadings in said equity cause. It sets forth no statement of the receiver of either of the two companies, nor does it allege that the receiver of either company was interviewed. It merely states that upon indefinite occasions Charles W. Semmes, who was president of the Semmes-Kelly Company, had informed counsel that he individually owned and controlled a majority of the stock of the grocery company. We do not think that such past statements of Mr. Semmes, in the circumstances existing when the receivers were appointed for the two companies, constituted a sufficient justification for the bank's lack of diligence.

In its petition herein appellant asked the court to decree that the grocery company is not a separate and independent croporation; that the property and assets alleged to belong to it are in effect the property and assets of the Semmes-Kelly Company, and the receiver herein be directed to transfer such assets to the receivers in bankruptcy of said Semmes-Kelly Company. Appellant here complains of the refusal of the court to grant this prayer. As previously stated, the Sanitary Grocery Company was ostensibly a distinct legal entity, and transacting business as such. The extent and nature of this indebtedness at the time this receiver was appointed does not clearly appear. The petition herein was filed July 14th, 1909, rule to show cause issued, and the receiver answered on July 29th, 1909. A hearing was had, and the petition dismissed on November 8th, 1909.

Meanwhile the Semmes-Kelly Company had been adjudged bankrupt and a trustee in bankruptcy appointed. The Cudahy Packing Company and other creditors of the Semmes-Kelly

Company had filed a petition in the bankruptcy court asking that the sale of the assets of the grocery company by the receiver of that company, on July 26th, 1909, be declared null and void; that the trustee in bankruptcy or receivers of the Semmes-Kelly Company take possession of the property of the grocery company. A hearing was had upon that petition, the rule to show cause, the returns thereunder, the proceedings of record in said equity cause, and upon oral testimony (not in this record). On August 17th, 1909, the bankruptcy court filed its findings of facts and conclusions of law. The court found that the Semmes-Kelly Company and the Sanitary Company were ostensibly separate and independent corporations; that the sale made by the receiver herein of the assets of the grocery company was made "pursuant to the order, duly granted, of the equity court in the said equity cause, in all respects fairly and in good faith.    *    *    *    That no advantage of any kind to the creditors of the Semmes-Kelly Company, or to any other party in interest, would result from an order vacating the same in the said equity cause. That the interests of creditors and of all parties concerned will be best protected and advanced by permitting the said sale to stand, and its proceeds, less the necessary and proper costs and expenses thereof, and without prejudice to the claims, if any, of the creditors of the Sanitary Grocery Company to priority thereon, *to be accounted for to the receivers of the Semmes-Kelly Company, or to its trutsee in bankruptcy, when appointed.*" The court ruled that at the time of the appointment of the receiver herein, and at the time of the passage of the order directing the sale by him of the assets of the grocery company, the equity court had jurisdiction of the subject-matter and of the parties; that neither the filing of the intervening petition nor the order adjudging the Semmes-Kelly Company bankrupt, nor any other proceeding in the case, terminated the jurisdiction of the equity court in said equity cause. The court thereupon denied the petition. From this order no appeal was taken.

On October 5th, 1909, an order was passed in the equity court referring the cause therein to the auditor, to state the

account of the receiver of the grocery company. It thus appears that nothing now remains to be done save the settlement of the receiver's account. It is therefore unnecessary to pass upon the question presented by this assignment of error, as a moot question only is presented. Of course, any balance remaining in the hands of the receiver after the settlement of his account will be turned over to the trustee in bankruptcy for distribution as suggested by the bankruptcy court in its findings above quoted.

This disposes of the case, and the decree is therefore affirmed, with costs. *Affirmed.*