## Peck et al. v. Trail.

(Decided Nov. 21, 1933.)

**378**

CHARLES FERGUSON for appellants.

J. R. WELLS for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming in part and reversing in part.

W. T. Peck and F. E. Riley executed and delivered to Mrs. Ethel Trail a promissory note for $150, bearing interest at 6 per cent. per annum from June 19, 1924, until paid. On February 4, 1926, she brought suit in the Livingston circuit court to recover on the note, and on April 1, 1926, judgment was rendered in her favor for the amount of the note, together with interest and costs.

On February 29, 1928, W. T. Peck and wife mortgaged a tract of land in Livingston county containing 250 acres to M. C. Peck and George Levan, to secure an indebtedness of $3,147.44, represented by two notes for $1,573.72 each, one payable to M. C. Peck, and the other payable to George Levan; but the mortgage was not recorded until February 10, 1930.

An execution was issued on the judgment which Mrs. Trail had recovered against W. T. Peck and F. E. Riley, placed in the hands of the sheriff of the county, and was thereafter returned, "No property found." On January 20, 1930, Mrs. Trail filed her petition in equity against Riley and W. T. Peck, and sued out a general order of attachment against their property, which was placed in the hands of the sheriff on the same day to do execution thereon. On February 9, 1930, the sheriff went to see F. E. Riley and W. T. Peck to make the levy. Not finding them, he made no levy on that day. On his return trip he stopped at the store of George Levan, one of the mortgagees. During his conversation with Levan he told him about having gone over to Mr. Peck's to execute the papers, and Levan remarked that he and Mr. Peck had a mortgage on the place, but it had not been recorded and he guessed they had slept on their rights. On the next day George Levan went

to the office of the county court clerk and had the mortgage to him and M. C. Peck recorded.

On February 11, 1930, the day after the mortgage was recorded, the sheriff levied the attachment on the 250-acre tract of land belonging to W. T. Peck. After due advertisement the land was sold at public outcry, and Mrs. Trail became the purchaser at the price of $274, for the payment of which sum she, together with her surety, R. F. Spees, executed bond payable January 7, 1931.

Relying upon the foregoing facts, Mrs. Trail brought this action against M. C. Peck and George Levan, the mortgagees, and W. T. Peck and wife, either to be adjudged the owner of the land or a lien thereon superior to the mortgage. After their demurrer to the petition and the petition as amended had been overruled, and Mrs. Trail had filed an amended petition, M. C. Peck and Levan filed an answer and counterclaim denying the allegations of the petition as amended, and pleading that their mortgage lien was superior to the attachment lien of Mrs. Trail. On final hearing the chancellor rendered judgment against W. T. Peck in the sum of $274, together with 6 per cent. interest from July 7, 1930, and costs. He also adjudged that Mrs. Trail's attachment lien was superior to the mortgage lien of M. C. Peck and George Levan, but subject to the homestead of W. T. Peck. From that judgment M. C. Peck, George Levan, and W. T. Peck have appealed, and prayed for an appeal.

Our conclusions on the questions involved may be summarized as follows:

1. There is no merit in the contention that the judgment awarding Mrs. Trail a superior lien is not supported by the pleadings. The petition as amended set forth the facts, and pleaded in the alternative that Mrs. Trail was either the owner of the land or was entitled to a superior lien thereon. Since her pleadings did not allege both title and possession, it may be that they were not sufficient to support a judgment that she was the owner of the land; but no such judgment was rendered. All that was adjudged was that she was entitled to a superior lien, and her allegations and prayer were sufficient for that purpose.

2. Under the statute an unrecorded mortgage is

not good as against creditors, and the word "creditors" includes all creditors irrespective of whether they acquired a lien by legal or equitable proceedings or by voluntary conveyance. Kentucky Statutes, sec. 496. The word "creditors" means subsequent creditors, secured or unsecured, and such antecedent creditors who, at some time prior to the recording of the mortgage or deed of trust, have secured some equity in the property. Mason & Moody v. Scruggs, 207 Ky. 66, 268 S. W. 833. An attachment binds the defendant's property in the county from the time it comes into the hands of the sheriff, although the lien may not be perfected, until after the levy. Section 212, Civil Code of Practice. Daniels v. Runyons, 164 Ky. 309, 175 S. W. 338. As the order of attachment was placed in the hands of the sheriff on January 20, 1930, and bound W. T. Peck's property from that time, and the mortgage was not recorded until February 10, 1930, it necessarily follows that at the time the mortgage was recorded Mrs. Trail had an equity in the property superior to the mortgage, though her lien was not perfected until February 11, 1930.

3. The fact that no lis pendens notice was filed is wholly immaterial, as Levan, one of the mortgagees, had actual notice of the order of attachment prior to the recording of the mortgage and, acting on that notice on his own behalf and on behalf of M. C. Peck, put the mortgage to record.

It follows that the court did not err in adjudging the attachment lien superior to the mortgage lien.

However, it was error to render a second personal judgment against W. T. Peck where, as here, the action was brought under section 439, Civil Code of Practice, Shaw v. McKnight-Keaton Grocery Co., 231 Ky. 223, 21 S. W. (2d) 269, and for that reason his motion for an appeal will have to be sustained.

Wherefore, the judgment is affirmed as to George Levan and M. C. Peck, and reversed as to W. T. Peck and cause remanded, with directions to set aside so much of the judgment as awards appellee a second personal judgment against him.

No costs will be taxed against W. T. Peck. Costs will be taxed four-fifths to George Levan and M. C. Peck, and one-fifth to appellee.